**FULBRIGHT & JAWORSKI LLP**
ROBERT DAWSON (BAR NO. 81790)
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
robert.dawson@nortonrosefulbright.com

Attorney for Plaintiff
SILICON LABORATORIES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILICON LABORATORIES INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> CRESTA TECHNOLOGY CORPORATION, a Delaware Corporation, <br><br> Defendant. | CASE NO. <br> _____ <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Silicon Laboratories Inc. ("Silicon Labs" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Cresta Technology Corporation ("CrestaTech" or "Defendant") and alleges as follows:

## THE PARTIES

1. Plaintiff Silicon Labs is a Delaware corporation having its principal place of business at 400 W. Cesar Chavez Street, Austin, Texas 78701.

2. Upon information and belief, Defendant CrestaTech is a Delaware corporation having its principal place of business at 3900 Freedom Circle, Suite 201, Santa Clara, California 95054.  CrestaTech may be served with process by serving its registered agent for service of process, Melinda Cheung, 3900 Freedom Circle, Suite 201, Santa Clara, California 95054.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

3. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has general personal jurisdiction over Defendant because its principal place of business is within the State of California and within this judicial District and because its affiliations with this State and district are so continuous and systematic as to render it essentially at home in this judicial District.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) in that acts of patent infringement have occurred in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Silicon Labs has suffered injuries as a result of these acts of patent infringement in this District.

6. This is an Intellectual Property case assigned on a district-wide basis pursuant to Local Rule 3-2(c).

## PATENTS-IN-SUIT

7. On October 23, 2001, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,308,055 ("the '055 Patent"),

entitled "Method and Apparatus for Operating a PLL for Synthesizing High-Frequency Signals for Wireless Communications." A true and correct copy of the '055 Patent is attached as Exhibit A.

8. On November 15, 2005, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,965,761 ("the '761 Patent"), entitled "Controlled Oscillator Circuitry for Synthesizing High-Frequency Signals and Associated Method." A true and correct copy of the '761 Patent is attached as Exhibit B.

9. On April 1, 2008, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,353,011 ("the '011 Patent"), entitled "Method and Apparatus for Operating a PLL for Synthesizing High-Frequency Signals for Wireless Communications." A true and correct copy of the '011 Patent is attached as Exhibit C.

10. On October 16, 2001, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,304,146 ("the '146 Patent"), entitled "Method and Apparatus for Synthesizing Dual Band High-Frequency Signals for Wireless Communications." A true and correct copy of the '146 Patent is attached as Exhibit D.

11. On October 24, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,137,372 ("the '372 Patent"), entitled "Method and Apparatus for Providing Coarse and Fine Tuning Control for Synthesizing High-Frequency Signals for Wireless Communications." A true and correct copy of the '372 Patent is attached as Exhibit E.

12. On May 15, 2001, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,233,441 ("the '441 Patent"), entitled "Method and Apparatus for Generating a Discretely Variable Capacitance for Synthesizing High-Frequency Signals for Wireless Communications." A true and correct copy of the '441 Patent is attached as Exhibit F.

13. Silicon Labs is the owner of all rights, title, and interest in and to the '055, '761, '011, '146, '372, and '441 Patents (collectively, "the Patents-in-Suit").

14. The Patents-in-Suit are valid and enforceable.

15. To the extent that any marking or notice was required by 35 U.S.C. § 287(a), all requirements under 35 U.S.C. § 287(a) have been satisfied with respect to the Patents-in-Suit.

## FACTUAL BACKGROUND

16. Silicon Labs is in the business of designing and developing high-performance, analog-intensive, mixed-signal integrated circuits serving markets and applications including the communications, consumer electronics, automotive, computing, and industrial industries. Its products are first-of-a-kind solutions, offering breakthroughs and innovations in integration, board space reduction, and cost savings. Silicon Labs is the market-share leader in silicon TV tuners, maintaining a significant technical and market lead over the competition as the sole provider of high-performance hybrid tuners in standard CMOS process technology. Silicon Labs' TV tuners were the first to fully displace traditional tuner modules in iDTVs and have been adopted by virtually all of the name-brand TV makers. Silicon Labs has shipped over 200 million silicon TV tuner units and over 3 billion mixed-signal integrated circuits to date.

17. Silicon Labs started in 1996 as a small company in Austin, Texas with a mission to design innovative mixed-signal integrated circuits. As a result of that drive to innovate and successful execution of its mission, Silicon Labs has become a global leader in the mixed-signal IC industry and has grown considerably since its humble beginnings, now employing over 900 people, including about seventy people at its office in Sunnyvale, California.

18. Through the years, Silicon Labs has invested significant resources to develop mixed-signal IC solutions that many doubted could be achieved. It has arduously sought to protect its innovative solutions by, among other things, filing and

procuring patent protection. Silicon Labs' patent portfolio, which includes the Patents-in-Suit, includes approximately 1,300 issued patents and pending applications. Silicon Labs' patent portfolio is extremely valuable and reflects years of Silicon Labs' research, testing, development, and relentless commitment to developing novel solutions in the mixed-signal integrated circuits industry.

19. Upon information and belief, CrestaTech is a company that designs, develops, and manufactures silicon tuners. Upon information and belief, CrestaTech sells silicon tuners such as the XC5000 product that use Silicon Labs' innovative technology. The XC5000 product is incorporated into products sold in the United States, including this District. CrestaTech has offered for sale and sold at least the XC5000 product without authorization from Silicon Labs or payment for use of Silicon Labs' innovative technology, to the detriment and injury of Silicon Labs.

20. Upon information and belief, infringing CrestaTech products, including but not necessarily limited to CrestaTech's XC5000 product, and products containing CrestaTech's XC5000 product have been and continue to be offered for sale, imported into, and sold throughout the United States, including in this District.

## COUNT I: INFRINGEMENT OF THE '055 PATENT

21. Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-20 of the Complaint as if fully set forth herein.

22. CrestaTech has infringed and continues to infringe one or more claims of the '055 Patent by virtue of its making, using, importing, offering for sale, and/or selling at least the XC5000 product in the United States, including within this District. CrestaTech is liable for its infringement of the '055 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c).

23. CrestaTech knowingly induces others to infringe one or more claims of the '055 Patent. CrestaTech's inducement of infringement includes, but is not limited to: (i) knowledge of the '055 Patent at least as of the filing date of this suit; (ii) intent to induce direct infringement of the '055 Patent; (iii) knowingly aiding and abetting

infringement by providing instruction manuals and other directions that aid and/or instruct the purchaser or user of an accused device to use that device in a manner that infringes certain claims of the '055 Patent and/or to sell products that incorporate an accused device; and (iv) actual or constructive knowledge that its actions induce infringement.

24. CrestaTech is also liable for contributory infringement because it offers to sell or sells within the United States or imports into the United States accused devices for use in practicing certain method claims of the '055 Patent and constituting a material part of the invention claimed by the '055 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, which accused devices are not a staple article or commodity of commerce suitable for substantial noninfringing use.

25. CrestaTech will continue its acts of infringement unless restrained and enjoined by this Court.

26. Silicon Labs has been, and continues to be damaged by CrestaTech's infringement. Silicon Labs is suffering, and will continue to suffer damages, including irreparable harm for which there is no adequate remedy at law, unless this Court enjoins CrestaTech's infringement of the '055 Patent.

27. As a result of CrestaTech's acts of infringement, Silicon Labs has suffered and will continue to suffer damages in an amount to be proved at trial.

**COUNT II: INFRINGEMENT OF THE '761 PATENT**

28. Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-27 of the Complaint as if fully set forth herein.

29. CrestaTech has directly and/or indirectly infringed one or more claims of the '761 Patent by virtue of its making, using, offering for sale, and selling at least the XC5000 product in the United States, including within this District. CrestaTech is liable for its infringement of the '761 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c).

30. CrestaTech knowingly induces others to infringe one or more claims of the '761 Patent. CrestaTech's inducement of infringement includes, but is not limited to: (i) knowledge of the '761 Patent at least as of the filing date of this suit; (ii) intent to induce direct infringement of the '761 Patent; (iii) knowingly aiding and abetting infringement by providing instruction manuals and other directions that aid and/or instruct the purchaser or user of an accused device to use that device in a manner that infringes certain claims of the '761 Patent and/or to sell products that incorporate an accused device; and (iv) actual or constructive knowledge that its actions induce infringement.

31. CrestaTech is also liable for contributory infringement because it offers to sell or sells within the United States or imports into the United States accused devices for use in practicing certain method claims of the '761 Patent and constituting a material part of the invention claimed by the '761 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, which accused devices are not a staple article or commodity of commerce suitable for substantial noninfringing use.

32. CrestaTech will continue its acts of infringement unless restrained and enjoined by this Court.

33. Silicon Labs has been, and continues to be damaged by CrestaTech's infringement. Silicon Labs is suffering, and will continue to suffer damages, including irreparable harm for which there is no adequate remedy at law, unless this Court enjoins CrestaTech's infringement of the '761 Patent.

34. As a result of CrestaTech's acts of infringement, Silicon Labs has suffered and will continue to suffer damages in an amount to be proved at trial.

### COUNT III: INFRINGEMENT OF THE '011 PATENT

35. Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-34 of the Complaint as if fully set forth herein.

36. CrestaTech has directly and/or indirectly infringed one or more claims of

the '011 Patent by virtue of its making, using, offering for sale, and selling at least the XC5000 product in the United States, including within this District. CrestaTech is liable for its infringement of the '011 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c).

37. CrestaTech knowingly induces others to infringe one or more claims of the '011 Patent. CrestaTech's inducement of infringement includes, but is not limited to: (i) knowledge of the '011 Patent at least as of the filing date of this suit; (ii) intent to induce direct infringement of the '011 Patent; (iii) knowingly aiding and abetting infringement by providing instruction manuals and other directions that aid and/or instruct the purchaser or user of an accused device to use that device in a manner that infringes certain claims of the '011 Patent and/or to sell products that incorporate an accused device; and (iv) actual or constructive knowledge that its actions induce infringement.

38. CrestaTech is also liable for contributory infringement because it offers to sell or sells within the United States or imports into the United States accused devices for use in practicing certain method claims of the '011 Patent and constituting a material part of the invention claimed by the '011 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, which accused devices are not a staple article or commodity of commerce suitable for substantial noninfringing use.

39. CrestaTech will continue its acts of infringement unless restrained and enjoined by this Court.

40. Silicon Labs has been, and continues to be damaged by CrestaTech's infringement. Silicon Labs is suffering, and will continue to suffer damages, including irreparable harm for which there is no adequate remedy at law, unless this Court enjoins CrestaTech's infringement of the '011 Patent.

41. As a result of CrestaTech's acts of infringement, Silicon Labs has suffered and will continue to suffer damages in an amount to be proved at trial.

## COUNT IV: INFRINGEMENT OF THE '146 PATENT

42. Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-41 of the Complaint as if fully set forth herein.

43. CrestaTech has directly and/or indirectly infringed one or more claims of the '146 Patent by virtue of its making, using, offering for sale, and selling at least the XC5000 product in the United States, including within this District. CrestaTech is liable for its infringement of the '146 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c).

44. CrestaTech knowingly induces others to infringe one or more claims of the '146 Patent. CrestaTech's inducement of infringement includes, but is not limited to: (i) knowledge of the '146 Patent at least as of the filing date of this suit; (ii) intent to induce direct infringement of the '146 Patent; (iii) knowingly aiding and abetting infringement by providing instruction manuals and other directions that aid and/or instruct the purchaser or user of an accused device to use that device in a manner that infringes certain claims of the '146 Patent and/or to sell products that incorporate an accused device; and (iv) actual or constructive knowledge that its actions induce infringement.

45. CrestaTech is also liable for contributory infringement because it offers to sell or sells within the United States or imports into the United States accused devices for use in practicing certain method claims of the '146 Patent and constituting a material part of the invention claimed by the '146 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, which accused devices are not a staple article or commodity of commerce suitable for substantial noninfringing use.

46. CrestaTech will continue its acts of infringement unless restrained and enjoined by this Court.

47. Silicon Labs has been, and continues to be damaged by CrestaTech's infringement. Silicon Labs is suffering, and will continue to suffer damages,

including irreparable harm for which there is no adequate remedy at law, unless this Court enjoins CrestaTech's infringement of the '146 Patent.

48. As a result of CrestaTech's acts of infringement, Silicon Labs has suffered and will continue to suffer damages in an amount to be proved at trial.

## COUNT V: INFRINGEMENT OF THE '372 PATENT

49. Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-48 of the Complaint as if fully set forth herein.

50. CrestaTech has directly and/or indirectly infringed one or more claims of the '372 Patent by virtue of its making, using, offering for sale, and selling at least the XC5000 product in the United States, including within this District. CrestaTech is liable for its infringement of the '372 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c).

51. CrestaTech knowingly induces others to infringe one or more claims of the '372 Patent. CrestaTech's inducement of infringement includes, but is not limited to: (i) knowledge of the '372 Patent at least as of the filing date of this suit; (ii) intent to induce direct infringement of the '372 Patent; (iii) knowingly aiding and abetting infringement by providing instruction manuals and other directions that aid and/or instruct the purchaser or user of an accused device to use that device in a manner that infringes certain claims of the '372 Patent and/or to sell products that incorporate an accused device; and (iv) actual or constructive knowledge that its actions induce infringement.

52. CrestaTech is also liable for contributory infringement because it offers to sell or sells within the United States or imports into the United States accused devices for use in practicing certain method claims of the '372 Patent and constituting a material part of the invention claimed by the '372 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, which accused devices are not a staple article or commodity of commerce suitable for substantial noninfringing use.

53. CrestaTech will continue its acts of infringement unless restrained and enjoined by this Court.

54. Silicon Labs has been, and continues to be damaged by CrestaTech's infringement. Silicon Labs is suffering, and will continue to suffer damages, including irreparable harm for which there is no adequate remedy at law, unless this Court enjoins CrestaTech's infringement of the '372 Patent.

55. As a result of CrestaTech's acts of infringement, Silicon Labs has suffered and will continue to suffer damages in an amount to be proved at trial.

## COUNT VI: INFRINGEMENT OF THE '441 PATENT

56. Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-55 of the Complaint as if fully set forth herein.

57. CrestaTech has directly and/or indirectly infringed one or more claims of the '441 Patent by virtue of its making, using, offering for sale, and selling at least the XC5000 product in the United States, including within this District. CrestaTech is liable for its infringement of the '441 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c).

58. CrestaTech knowingly induces others to infringe one or more claims of the '441 Patent. CrestaTech's inducement of infringement includes, but is not limited to: (i) knowledge of the '441 Patent at least as of the filing date of this suit; (ii) intent to induce direct infringement of the '441 Patent; (iii) knowingly aiding and abetting infringement by providing instruction manuals and other directions that aid and/or instruct the purchaser or user of an accused device to use that device in a manner that infringes certain claims of the '441 Patent and/or to sell products that incorporate an accused device; and (iv) actual or constructive knowledge that its actions induce infringement.

59. CrestaTech is also liable for contributory infringement because it offers to sell or sells within the United States or imports into the United States accused devices for use in practicing certain method claims of the '441 Patent and

constituting a material part of the invention claimed by the '441 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, which accused devices are not a staple article or commodity of commerce suitable for substantial noninfringing use.

60. CrestaTech will continue its acts of infringement unless restrained and enjoined by this Court.

61. Silicon Labs has been, and continues to be damaged by CrestaTech's infringement. Silicon Labs is suffering, and will continue to suffer damages, including irreparable harm for which there is no adequate remedy at law, unless this Court enjoins CrestaTech's infringement of the '441 Patent.

62. As a result of CrestaTech's acts of infringement, Silicon Labs has suffered and will continue to suffer damages in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

Plaintiff Silicon Labs prays for the following relief:

A. A judgment for Silicon Labs that Defendant is directly and indirectly infringing the Patents-in-Suit in violation of 35 U.S.C. § 271;

B. A permanent injunction enjoining Defendant, its officers, directors, affiliates, agents, servants, employees, and all those persons in privity or in concert with any of them from directly or indirectly making, using, selling, offering to sell, importing, and having imported into the United States any infringing products or inducing infringement of the Patents-in-Suit;

C. An award of damages for Defendant's infringement of the Patents-in-Suit, together with interest (both pre- and post-judgment interest), costs, and disbursements as determined by this Court under 35 U.S.C. § 284;

D. A judgment declaring this to be an exceptional case under 35 U.S.C. § 285 and awarding Silicon Labs its reasonable attorney fees; and

E. Such other and further relief in law or in equity to which Silicon Labs may be justly entitled.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and in accordance with Civil Local Rule 3-6, Silicon Labs hereby demands a trial by jury on all issues so triable in this matter.

Dated: July 16, 2014          Respectfully submitted,

FULBRIGHT & JAWORSKI LLP
Robert Dawson


By /s/ Robert Dawson
   Attorney for Plaintiff
   Silicon Laboratories Inc.