UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SILICON LABORATORIES INC., | ) | Case No. 5:14-cv-03227-PSG |
| Plaintiff, | ) ) | **ORDER GRANTING-IN-PART MOTION TO STRIKE INFRINGEMENT CONTENTIONS OR ALTERNATIVELY TO COMPEL SUPPLEMENTAL INFRINGEMENT CONTENTIONS** |
| v. | ) ) | |
| CRESTA TECHNOLOGY CORPORATION, | ) ) | |
| Defendant. | ) | |
| | ) | **(Re: Docket No. 44)** |

A recurring dispute in patent cases is when exactly a patentee can rely on "representative products" when providing infringement contentions. While the Northern District's Local Patent Rules require that *every* limitation of *every* asserted claim be charted against *every* accused product, this court has not been blind to senselessness of repeating identical multi-page chart after multi-page chart when one or more products represent others. And so when a given product is claimed to represent others, the court has permitted non-duplicative charting. But when exactly does one product "represent" another and what obligation does a patentee have in making such a claim? The case at bar shows why something more than just the patentee's saying it is so is required. As set forth below, the court GRANTS Defendant Cresta Technology Corporation's motion to compel supplemental infringement contentions.

1

**I.**

This court's patent rules reflect this court's view that—especially in patent cases—due process requires disclosure. By mandating disclosure in a variety of ways, the rules aim to "make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims."[1]

As just one example, Patent L.R. 3-1(c) requires a patentee to serve "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."[2] While the rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case, . . . a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it."[3] The purpose is to "provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'"[4] A party can rely on representative products to meet its obligations.[5] But "Rule 3-1 . . . requires Plaintiff to articulate how the accused products share the same, or substantially the same, infringing [qualities] with any other product or with the . . . 'representative' product[]."[6]

CrestaTech makes and sells silicon tuners for televisions and set-top boxes. Plaintiff Silicon Laboratories Inc. accused CrestaTech and its tuners of infringing six United States patents. While this is the first suit between the parties involving all six of these patents, the parties are

---

[1] *InterTrust Techs. Corp. v. Microsoft Corp.*, Case No. 01-cv-01640, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003).

[2] N.D. Cal. Patent L.R. 3-1(c).

[3] *DCG Sys. v. Checkpoint Techs., LLC*, Case No. 11-cv-03792, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).

[4] *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).

[5] *See, e.g.*, *Tech. Licensing Corp. v. Grass Valley USA, Inc.*, Case No. 12-cv-06060, 2014 WL 3752108, at *3 (N.D. Cal. July 30, 2014).

[6] *Bender v. Freescale Semiconductor, Inc.*, Case No. 09-cv-01156, 2010 WL 1689465, at *3 (N.D. Cal. Apr. 26, 2010).

United States District Court
For the Northern District of California

engaged in various cases involving different patents than those that are at issue here, including: (1) *Cresta Technology Corporation v. Silicon Laboratories, Inc. et al.*, Case No. 14-cv-00078 (D. Del. Jan. 21, 2014); (2) *Certain Television Sets, Television Receivers, Television Tuners, and Components Thereof*, Inv. No. 337-TA-91 (I.T.C. Jan. 28, 2014); (3) *Silicon Laboratories, Inc. v. Cresta Technology Corporation*, IPR2014-00728 (P.T.A.B. May 5, 2014); (4) *Silicon Laboratories, Inc. v. Cresta Technology Corporation*, IPR2014-00809 (P.T.A.B. May 23, 2014); and (5) *Silicon Laboratories, Inc. v. Cresta Technology Corporation*, IPR2014-00881 (P.T.A.B. June 4, 2014).

Last month, Silicon Labs served CrestaTech with its Rule 3-1(c) disclosure of asserted claims and infringement contentions, naming CrestaTech's "XC5000 silicon tuner" and the "X7/CTC7xx tuner" as Accused Instrumentalities.[7] The XC5000 is not, however, a distinct product. That term refers instead to two distinct CrestaTech products—the XC5000ACQ and the XC5000CCQ tuners.[8] Silicon Labs only charted the XC5000ACQ tuner;[9] it did not provide claim charts for either the XC5000CCQ or any product in the accused X7 line.[10]

According to Silicon Labs, CrestaTech "has represented in public documents" that the X7 line of products "is reasonably similar in structure and/or operation to the XC5000[ACQ]."[11] CrestaTech disputes this and urges that the tuners in fact employ different wireless communication systems.[12] CrestaTech goes further, saying that, if anything, publicly available marketing documents clearly highlight the differences between the X7 line and CrestaTech's XC5000 products.[13] CrestaTech also points out that, similar to the XC5000ACQ, the XC5000CCQ and the

---

[7] *See* Docket No. 44-2 at 3.

[8] Docket No. 44-4.

[9] *See id.*; Docket No. 44-2, App'x G at v.

[10] *See* Docket No. 44-2 at 3.

[11] *Id.*

[12] *See* Docket No. 44-4.

[13] *Compare* Docket No. 44-2 at App'x H (describing the XC5000 products, which use BiCMOS technology) *with* Docket No. 44-3 (describing the X7 tuners as containing a "low cost CMOS

X7 products are publicly available, as is relevant information about the products, such as product briefs that would permit Silicon Labs to do a tear-down of each accused product.[14]

Not satisfied with Silicon Labs' disclosures, CrestaTech now moves the court for relief in one of two forms: an order striking the contentions altogether or at least an order compelling Silicon Labs to chart each product.

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

*Bender* is clear that, in order to rely on a claim that one accused product represents another for purposes of Rule 3-1(c), a patentee must do more than state as much. A patentee must state *how*.[15] Silicon Labs' contentions fail this basic test.

*First*, CrestaTech has not, as Silicon Labs suggests, made sufficient judicial admissions in the parties' ITC proceedings. Silicon Labs is right that in the ITC case it brought, CrestaTech agreed to a consent order in that case that bars CrestaTech from importing tuners that infringe the asserted claims. Silicon Labs also is right that before that consent order it charged all SC5000 and X7 products with infringement using just the XC5000 charts as representative of all products accused. But even if the consent order could be read as admitting that all accused products infringe in the same way, that case only involved two of the six patents at issue here. CrestaTech said

---

process"); *see also* Docket No. 44-2, App'x G at v (third-party analysis describing the XC5000ACQ tuner as employing the "SiGe BiCMOS" process type).

[14] *See* Docket No. 44-2, App'x G at v.

[15] *See also Ameranth, Inc. v. Pizza Hut, Inc.*, Case Nos. 12-cv-00729 et al., 2013 WL 3894880, at *7 (S.D. Cal. July 26, 2013) ("While [the plaintiff] says it identified the accused versions temporally, by their functional aspects or by their version names or numbers, it must at least state how the accused previous versions are the same or reasonably similar to the charted version, or else provide a separate chart for each version."); *Infineon Techs. AG v. Volterra Semiconductor Corp.*, Case No. 11-cv-06239, 2012 WL 6184394, at *3 (N.D. Cal. Dec. 11, 2012) ("the plaintiff nevertheless must 'articulate how the [unknown] accused products share the same, or substantially the same, infringing [structure]' with a named product").

4

Case No. 5:14-cv-03227-PSG
ORDER GRANTING-IN-PART MOTION TO STRIKE INFRINGEMENT CONTENTIONS OR ALTERNATIVELY TO COMPEL SUPPLEMENTAL INFRINGEMENT CONTENTIONS

nothing about the other four. Similarly, in the ITC case brought by CrestaTech, CrestaTech at most acknowledged that its products practice its own patents, not the patents asserted by Silicon Labs in this case.

***Second***, the product brief for the XC5000 cited by Silicon Labs does not explain how the accused products share the same allegedly infringing structure. In contrast to the product manuals in *Tech Licensing Corp.*, the brief here suggests different structures that are material to infringement of at least one of the asserted claims: Claim 3 of United States Patent No. 6,304,146. In particular, the briefs depict both XC5000ACQ and XC5000CCQ tuners as using BiCMOS technology, but with the former comprising one in a package and the latter packaging comprising two dies. The X7 products use CMOS and BiCMOS technology and unlike the XC5000ACQ, comprise two dies in the packaging. Because Claim 3 requires a single integrated circuit, the apparent structure of two dies—or two circuits—is significant.

The court does not mean to suggest that Silicon Labs must tear down—or reverse engineer—each accused product to meet its burden. This court has repeatedly held that reverse engineering is not required to provide sufficient infringement charts.[16] But Silicon Labs must look to the information available to it to explain how the non-charted products work in the same material fashion as those charted. This it has not done.

No later than 21 days from this order, Silicon Labs shall serve separate infringement contention charts for each accused product. Lest there be any doubt, the court does not intend to let this hiccup delay this case. CrestaTech therefore is advised that in the meantime it may not delay serving its invalidity contentions. To the extent the supplemental infringement contention charts

---

[16] *See, e.g.*, *Bender*, 2010 WL 1689465, at *4 (noting that reverse engineering is not a per se requirement); *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, Case No. 12-cv-04967, 2013 WL 1878912, at *3 (N.D. Cal. May 3, 2013) (same); *Creagri, Inc. v. Pinnaclife Inc., LLC*, Case No. 11-cv-06635, 2012 WL 5389775, at *3 (N.D. Cal. Nov. 2, 2012) (finding plaintiff's infringement contentions sufficient even though it did not provide the weight ratios of the allegedly infringing chemical solution and relied exclusively on advertising materials for the facts of its contentions); *FusionArc, Inc. v. Solidus Networks, Inc.*, Case No. 06-cv-06760, 2007 WL 1052900, at *1 (N.D. Cal. Apr. 5, 2007) (denying defendant's motion to strike or amend infringement contentions where plaintiff used marketing materials to determine how the accused product operated instead of reverse engineering).

justify amendment of the invalidity contentions, CrestaTech must seek relief from the court. CrestaTech also is advised that, by insisting that its products are not representative of one another, CrestaTech has put in play all of the accused products for purposes of discovery. Time will tell if in doing so it has won a preliminary battle at the cost of a greater war.

**SO ORDERED.**

Dated: February 25, 2015

                                                PAUL S. GREWAL
                                                United States Magistrate Judge

6

Case No. 5:14-cv-03227-PSG
ORDER GRANTING-IN-PART MOTION TO STRIKE INFRINGEMENT CONTENTIONS OR ALTERNATIVELY TO COMPEL SUPPLEMENTAL INFRINGEMENT CONTENTIONS