UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILICON LABORATORIES, INC., <br> Plaintiff, <br> v. <br> CRESTA TECHNOLOGY CORPORATION, <br> Defendant. | Case No. 14-cv-03227-PSG <br><br> **ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO LACHES** <br><br> **(Re:  Docket No. 140-3, 146-20)** |

Thanks to the Federal Circuit and in its decision in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,[1] laches remains alive and well in patent cases as a defense to pre-suit damages.  As the Circuit explained, Congress recognized laches in 35 U.S.C. § 282 for a reason.[2]  Trial courts must defer to that reasoning, no matter their own doubts about the tension between laches and the six-year statute of limitations in 35 U.S.C. § 286.[3]  And so the familiar requirements of *Aukerman* for an accused infringer looking to prove laches remain in play:  "1. the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and 2. the delay operated to the prejudice or injury of the defendant."[4]

Plenty of interesting questions about the application of laches in individual cases remain,

---

[1] 807 F.3d 1311 (Fed. Cir. 2015) (en banc).

[2] *See id.* at 1321-23.

[3] *See id.* at 1329-30.

[4] *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc).

1
Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO LACHES

as this case amply demonstrates. Can a patentee be said to have delayed filing suit unreasonably and inexcusably when its actual or constructive knowledge of its claim was subject to a non-disclosure agreement barring any use of what it has come to know for anything other than discussing a possible business relationship? Because no case from the Federal Circuit, or any other court, suggests the answer is yes, and other requirements for laches are missing from the record, the court finds that no reasonable jury could find that laches could apply.

Defendant Cresta Technology Corporation's motion for summary judgment of laches[5] is DENIED; Plaintiff Silicon Laboratories, Inc.'s motion for summary judgment of no laches[6] is GRANTED.

**I.**

Laches concerns "the reasonableness of the plaintiff's delay in suit."[7] "For over two decades, *Aukerman* governed the operation of laches in patent cases. However, [in 2014] in *Petrella* the Supreme Court held that laches was not a defense to legal relief in copyright law."[8] And so in 2015, in *SCA Hygiene*, the Federal Circuit acting en banc took a long, hard look at whether laches in patent case remains available.

The conclusion was that it is. 35 U.S.C. § 282(b) provides as follows:
> The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
> (1) Noninfringement, absence of liability for infringement or unenforceability.
> (2) Invalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability.
> (3) Invalidity of the patent or any claim in suit for failure to comply with—
>  (A) any requirement of section 112, except that the failure to disclose the best mode shall not be a basis on which any

---

[5] *See* Docket No. 146-20 at 9-15.

[6] *See* Docket No. 140-3 at 7-8.

[7] *Aukerman*, 960 F.2d at 1032-33.

[8] *SCA Hygiene*, 807 F.3d at 1319 (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1964 (2014)).

2
Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO LACHES

>claim of a patent may be canceled or held invalid or otherwise unenforceable; or
>(B) any requirement of section 251.
>(4) Any other fact or act made a defense by this title.

The Circuit relied heavily on the fact that "§ 282 uses inclusive language, the legislative history characterizes § 282 as 'broader' and 'general,' and the Federico Commentary [reflection by a principal draftsman of the 1952 recodification] explicitly states that § 282 includes laches."[9] The Circuit also held that "a laches defense barred recovery of legal remedies."[10]

CrestaTech was founded by Mihai Murgulescu and George Haber in 2005.[11] Its initial products included a receiver for satellite radio and a television platform.[12] CrestaTech entered the television tuner market in September 2011, when it acquired the assets of Xceive Inc., a company developing and selling television tuners.[13] Among the assets that CrestaTech acquired was the XC5000 series of television tuner products—now the accused products in this suit—which Xceive had developed prior to its acquisition in September 2011.[14] Xceive had been selling the XC5000 since at least January 2007.[15]

Silicon Labs began in Austin, Texas, in 1996.[16] In the twenty years since, the company has developed and sold a variety of silicon-based TV tuners, with many name-brand TV sets now including Silicon Labs components.[17] Sometime in the first half of 2007, Silicon Labs contacted

---

[9] *Id.* at 1323.

[10] *Id.* at 1328.

[11] *See* Docket No. 146-3 at 23:4-6, 9, 12.

[12] *See id.* at 24:23-24, 25:1-7, 13-19.

[13] *See id.* at 28:2-6, 19-22.

[14] *See id.* at 53:7-11.

[15] *See* Docket No. 146-4.

[16] *See* Docket No. 1 at ¶ 17.

[17] *See id.* at ¶¶ 16-17.

Xceive representing that it intended to acquire or merge with Xceive.[18]  Silicon Labs performed due diligence in evaluating Xceive and the now-accused products.[19]  As part of this process, Silicon Labs and its CEO, Tyson Tuttle, executed a Non-Disclosure Agreement and were provided with a set of Xceive confidential and proprietary documents and items.[20]  Among those items was an Evaluation Kit for the XC5000,[21] including a number of XC5000 evaluation boards, on which Silicon Labs performed "extensive tests."[22]  Silicon Labs' testing included evaluating the XC5000's overall digital performance, compliance with various digital specifications, analog performance, blocking performance, and sensitivity.[23]  Silicon Labs also x-rayed the XC5000 to determine its die size.[24]

In September 2011, CrestaTech decided to purchase certain assets of Xceive, including the XC5000 products and corresponding patents.[25]  At that time CrestaTech was aware of the due diligence that Silicon Labs had performed on Xceive.[26]

In February 2014, CrestaTech initiated an ITC complaint against Silicon Labs, asserting that Silicon Labs and several of its customers infringed three CrestaTech-held patents related to

---

[18] *See* Docket No. 146-6.

[19] *See* Docket No. 146-2 at 60:4-8.

[20] *See* Docket No. 146-7.

[21] An Evaluation Kit is a set comprising an electronic board designed to measure the electrical performance of a product, necessary software and firmware and related documents such as datasheets.  *See* Docket No. 147-10 at ¶ 4.

[22] Docket No. 146-2 at 60:4-8, 11-12.

[23] *See id.* at 60:15-18.

[24] *See id.* at 63:17-19.

[25] *See* Docket No. 146-3 at 28:2-6, 19-22.

[26] *See* Docket No. 147-10 at ¶ 6.

television tuners.[27] A few months later, in July 2014, Silicon Labs responded with this suit.[28] Among its defenses, CrestaTech contends that Silicon Labs' pre-suit damages claims are barred by laches.[29] A rebuttable presumption of laches arises "upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity."[30] With the presumption, the two elements of unreasonable delay and prejudice must be inferred, absent rebuttal evidence.[31] CrestaTech's argument in its essence is that Silicon Labs unreasonably delayed in bringing its claims more than six years after its extensive diligence of the XC5000 products should have put it on notice of that those products and others like them infringe the asserted patents.

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consent to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[32]

## III.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case.[33] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

---

[27] Certain Television Sets, Television Receivers, Television Tuners, and Components Thereof, USITC Inv. No. 337-TA-910 (Sept. 29, 2015) (Terminated).

[28] *See* Docket No. 1.

[29] *See* Docket No. 20 at 6.

[30] *Aukerman*, 960 F.2d at 1035-36.

[31] *See id.* at 1037.

[32] *See* Docket Nos. 21, 22.

[33] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

5
Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO LACHES

non-moving party.[34] All evidence must be viewed in the light most favorable to the non-moving party. At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[35] Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[36] If this burden is met, the burden shifts to the non-moving party.[37] Applying these standards to the claims, defenses and record of this case, the court is persuaded that summary judgment is appropriate, but only as to certain issues.

Applying these standards to the laches defense asserted in this case, the court is persuaded that summary judgment on the issue of laches is appropriate, in favor of Silicon Labs.

***First***, unlike in many of the published cases finding that laches could apply, the particular operations of the accused products—in particular, the primary XC5000 product—were neither open nor notorious.[38] In fact, CrestaTech does not even seriously make this claim, focusing instead on Silicon Labs' investigation of the product as part of its 2007 proposed acquisition of XCeive.

***Second***, even if Silicon Labs' investigation did give it enough insight that should have prompted either further investigation of infringement or the filing of a suit—a fact very much in genuine dispute—there is no genuine dispute about the NDA. In particular, there is no genuine dispute that Silicon Labs would have violated the Confidentiality Agreement with Xceive if it had undertaken the detailed technical analysis necessary to determine if the 2007 XC5000 was

---

[34] *See id.*

[35] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[36] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[37] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 630, 630 (9th Cir. 1987).

[38] *Cf. Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1338-39 (Fed. Cir. 1998); *Comcast Cable Commc'ns Corp. v. Finisar Corp.*, Case No. 06-cv-04206, 2008 WL 170672, at *3 (N.D. Cal. Jan. 17, 2008).

infringing. The Confidentiality Agreement expressly limited Silicon Labs' use of Xceive's information and test samples to the "Purpose" of "discussing a possible business relationship" between Silicon Labs and Xceive.[39] Silicon Labs could "use the other party's Confidential Information only for the Purpose," and it "agree[d] not to use such Confidential Information for any other reason."[40] In particular, the contract provided that the party "receiving Confidential Information"—here Silicon Labs—"in the form of samples, . . . tangible products or materials, agrees not to analyze . . . such tangible products or materials."[41] Similarly, Silicon Labs could share Xceive's test samples only with those employees having a "reasonable need for such information for the Purpose."[42]

Patent law—and particularly an equitable doctrine such as laches—does not require Silicon Labs to breach contracts by entering into a Confidentiality Agreement to surreptitiously obtain materials in support of a patent infringement action. The adverse consequences of such a rule are somewhat obvious. In every high-tech industry, and especially in this district, companies regularly and actively market themselves or their assets to buyers. They do so by providing those buyers with all the information they might need to estimate the would-be targets' value. And to protect themselves from the misuse of this information—in the form of trade secret theft, product leaks or, of course, suits for patent infringement—targets ask potential buyers to enter into confidentiality agreements that restrict what the buyers can do with the information the targets have handed over. If patent law were to impose an obligation on buyers to pursue infringement claims based on information provided during the diligence period, regardless of whether buyers have promised not to do just that, these confidentiality agreements would lose much of their meaning. Think of the chilling effect on the acquisition activity that catalyzes the industries that

---

[39] Docket No. 146-7 at § 1.

[40] *Id.* at § 5.

[41] *Id.*

[42] *Id.* at § 4.

1  patronize our patent system. Laches cannot be stretched so far.

2  ***Third***, even if Silicon Labs could be held to have had a duty to investigate based on its 2007 Xceive diligence, there is no dispute that until October 21, 2013, Silicon Labs was involved in extensive patent litigation with MaxLinear, a much larger player in the silicon tuner market than Xceive or CrestaTech.[43] The MaxLinear litigation, involving no fewer than three separate lawsuits between Silicon Labs and MaxLinear, settled after the parties agreed to a cross-license agreement and a one-time $1,250,000 payment from MaxLinear to Silicon Labs.[44] In addition, from August 16, 2010 to December 20, 2011, Silicon Labs pursued litigation against another larger infringer, Airoha Technology Corp.[45] CrestaTech was well aware of and monitoring the MaxLinear litigation through several sources, including its own leadership, customers and a potential merger partner.[46] CrestaTech was repeatedly asked for assurances that it did not infringe Silicon Labs patents—questions that it "sidestepped."[47] This is not a case in which CrestaTech was duped into believing that Silicon Labs would not protect its intellectual property.[48]

***Fourth***, even if Silicon Labs unreasonably delayed, there is no genuine dispute that CrestaTech suffered no real prejudice as a result. "Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense. Such prejudice may be either economic

---

[43] *See* Docket Nos. 163-1, 163-4. In 2012, MaxLinear held 9% of the silicon tuner market, compared to less than 1% for CrestaTech, and Silicon Labs did not consider CrestaTech one of its three primary competitors. *See* Docket No. 162-6 at 226:17-227:2; Docket No. 163-9 at SLNC0016159.

[44] *See* Docket No. 163-3 at 2.

[45] *See* Docket Nos. 163-5, 163-6. In 2011, Airoha outsold CrestaTech by a ratio of 2.5 to 1. *See* Docket No. 163-9 at SLNC0016158.

[46] *See* Docket No. 140-6 at 149:7-13; Docket No. 140-7; Docket No. 140-8; Docket No. 140-9.

[47] Docket No. 140-12 at 92:22-93:8.

[48] *See Aukerman*, 960 F.2d at 1039 (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 878 (Fed. Cir. 1991)) ("If a defendant is, for example, aware of the litigation from other sources, it would place form over substance to require a specific notice.").

8
Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AS TO LACHES

or evidentiary."[49]  "Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit."[50]  "Such damages or monetary losses are not merely those attributable to a finding of liability for infringement," because "[e]conomic prejudice would then arise in every suit."[51]  Instead, "[t]he courts must look for a *change* in the economic position of the alleged infringer during the period of delay."[52]

CrestaTech argues that it has suffered economic prejudice, but it has offered no real evidence to support its contention.  The only concrete damages or expenditures CrestaTech identifies that it could have avoided are some $500,000 in attorney's fees.[53]  But this is a routine, even if unfortunate, cost when defending any patent litigation, and so is not evidence of any prejudice.[54]  If Silicon Labs had sued Xceive in 2007, or CrestaTech at some time earlier than 2014, it presumably would have incurred the same or equivalent defense fees—particularly in light of their CEO's position that CrestaTech will not stop making or selling the accused products until forced to do so.[55]

CrestaTech also argues that it could have used an off-the-shelf component from its

---

[49] *Id.* at 1033.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *See* Docket No. 146-16 at ¶¶ 47-48.  CrestaTech also claims that it would not have lost a customer, but it offers no evidence whatsoever to support this assertion.  *See id.* at ¶ 47.  Moreover, this claim appears in the rebuttal expert report of Matthew Lewis, whom a previous order from the court has barred from testifying as to laches.  *See* Docket No. 123 at 1.

[54] *See Aukerman*, 960 F.2d at 1033.

[55] *See* Docket No. 140-12 at 91:8-13; *see also Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1376 (Fed. Cir. 2010) (holding that evidence showing that defendant would not have acted differently if sued earlier negated its assertion of economic prejudice), *abrogated on other grounds by Nautilus, Inc. v. Biosig Insruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

CTC200 product line as a non-infringing substitute for the accused products. CrestaTech's only supporting evidence is the opinion of Mihai Murgulescu in his rebuttal expert report.[56] This testimony is not admissible. Because Murgulescu failed to mention laches in his opening expert report, the court previously ordered that he could not testify on that issue.[57] In the absence of any competent evidence of prejudice, in addition to the other issues identified above, no reasonable factfinder could conclude that Silicon Labs' claims are barred by laches.

**SO ORDERED.**

Dated: February 22, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[56] *See* Docket No. 146-15 at 37-39.

[57] *See* Docket No. 123 at 1.