UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILICON LABORATORIES, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>CRESTA TECHNOLOGY<br>CORPORATION,<br><br>            Defendant. | Case No. <u>14-cv-03227-PSG</u><br><br>**ORDER RE: MOTIONS FOR<br>SUMMARY JUDGMENT AND<br>DEFENDANT'S MOTION TO STRIKE**<br><br>**(Re:  Docket No. 140-3, 144-3, 146-20, 168)** |

Plaintiff Silicon Laboratories, Inc. alleges that Defendant Cresta Technology Corporation's TV tuners infringe six Silicon Labs patents covering certain frequency synthesizer circuits.[1]  With trial just around the corner, the parties have filed competing motions for summary judgment.[2] CrestaTech also has filed a separate motion to strike an expert declaration that Silicon Labs submitted in opposition to CrestaTech's summary judgment motion.[3]

The court already has issued separate orders on laches[4] and indefiniteness,[5] but the parties' motions present a number of other issues.  Long story short, Silicon Labs' motions for summary judgment are GRANTED, but in limited part.  Both of CrestaTech's motions are DENIED.

---

[1] *See* Docket No. 1.

[2] *See* Docket Nos. 140-3, 144-3, 146-20.

[3] *See* Docket No. 168.

[4] *See* Docket No. 204.

[5] *See* Docket No. 206.

1

Case No. <u>14-cv-03227-PSG</u>
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

## I.

Silicon Labs began in Austin, Texas, in 1996.[6]  In the twenty years since, the company has developed and sold a variety of silicon-based TV tuners, with many name-brand TV sets now including Silicon Labs components.[7]  CrestaTech was founded by Mihai Murgulescu and George Haber in 2005.[8]  Its initial products included a receiver for satellite radio and a television platform.[9]  CrestaTech entered the TV tuner market in September 2011, when it acquired the assets of Xceive Inc., a company developing and selling television tuners.[10]  Among the assets that CrestaTech acquired was the XC5000 series of television tuner products[11]—the accused products in this suit.[12]

Silicon Labs asserts six patents against these products:  U.S. Patent Nos. 6,137,372, 6,233,441, 6,304,146, 6,308,055, 6,965,761 and 7,353,011.[13]  All six name David Welland of Silicon Labs as their inventor, share an effectively identical specification and claim priority to patent applications filed on May 29, 1998.[14]  The patents cover a frequency synthesizer circuit.[15]  That means an integrated circuit that generates an output signal at a desired frequency.[16]

---

[6] *See* Docket No. 1 at ¶ 17.

[7] *See id.* at ¶¶ 16-17.

[8] *See* Docket No. 146-3 at 23:4-6, 9, 12.

[9] *See id.* at 24:23-24, 25:1-7, 13-19.

[10] *See id.* at 28:2-6, 19-22.

[11] *See id.* at 53:7-11.

[12] *See* Docket No. 1 at ¶¶ 19-20.

[13] *See id.* at ¶¶ 21-62.

[14] *See* Docket Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6.

[15] *See* Docket No. 1-1 at col. 1:7-10.  Simply for the sake of brevity, all citations here are to the '055 patent.  The other specifications are identical in all relevant respects.

[16] *See id.* at col. 3:30-34.

2

According to the specification, the novelty of the invention lies in its ability to generate a pure output signal despite its greater degree of integration onto a single chip compared to the prior art.[17]

The output frequency from the frequency synthesizer depends on the capacitance of a pair of smaller circuits within the synthesizer.[18]  One of these variable capacitance circuits can be set to any of a discrete set of capacitance values, while the other varies continuously within a smaller range.[19]  In effect, the discretely variable capacitance circuit allows for coarse tuning adjustment of the output frequency, and the continuously variable capacitance circuit allows finer tuning.[20] The figure below shows a high-level view of the frequency synthesizer.  $C_D$ represents the discretely variable capacitance circuit, $C_A$ the continuously variable capacitance circuit, $B_C$ and $V_C$ their respective control signals and $f_{OUT}$ the output frequency.[21]



The six patents at issue differ materially only as to their abstracts and claims.  Some claims cover different aspects of the apparatus itself, while others are method claims related to how the

---

[17] *See id.* at col. 3:23-34.

[18] *See id.* at col. 3:34-39.

[19] *See id.* at col. 8:8-15.

[20] *See id.* at col. 3:39-47, 8:25-39.

[21] *See id.* at col. 8:1-15.

[22] *Id.* at fig. 4.

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

United States District Court
Northern District of California

frequency synthesizer operates.[23]  In all, Silicon Labs has asserted 23 claims across these six patents.[24]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consent to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[25]

## III.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Material facts are those that may affect the outcome of the case.[26]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[27]  All evidence must be viewed in the light most favorable to the non-moving party.  At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[28]  Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[29]  If this burden is met, the burden shifts to the non-moving party.[30]  For the majority of the issues that the parties raise in their

---

[23] *See* Docket No. 1-1 at col. 31-36; Docket No. 1-2 at col. 31-34; Docket No. 1-3 at col. 31-34; Docket No. 1-4 at col. 31-34; Docket No. 1-5 at col. 31-34; Docket No. 1-6 at col. 31-36.

[24] *See* Docket No. 64-2 at 2.

[25] *See* Docket Nos. 21, 22.

[26] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

[27] *See id.*

[28] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[29] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[30] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 630, 630 (9th Cir. 1987).

4

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

papers, they have not satisfied this exacting standard.

*First*, Silicon Labs moves for summary judgment on each of CrestaTech's affirmative defenses—laches, waiver, estoppel and unclean hands.  The court already has ruled in Silicon Labs' favor on laches,[31] and CrestaTech has withdrawn its defenses of waiver and unclean hands.[32]  That leaves only estoppel.

An equitable estoppel defense to a patent infringement claim requires the following three elements:  "(1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement."[33] "[S]ilence alone will not create an estoppel unless there was a clear duty to speak, or somehow the patentee's continued silence reinforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested."[34]

CrestaTech's case for estoppel rests on Silicon Labs' actions when it was considering acquiring or merging with Xceive in 2007.[35]  As part of the due diligence process, Silicon Labs received documentation on and samples of the XC5000 product, on which Silicon Labs performed extensive tests.[36]  CrestaTech now argues that Silicon Labs' silence since 2007 misled CrestaTech into believing that it did not infringe Silicon Labs' patents.

---

[31] *See* Docket No. 204.

[32] *See* Docket No. 158-4 at 16.

[33] *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc)).

[34] *Aukerman*, 960 F.2d at 1043-44 (citation omitted).

[35] *See* Docket No. 146-6.

[36] *See* Docket No. 146-2 at 60:4-18, 63:17-19; Docket No. 146-7.

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

United States District Court
Northern District of California

This defense fares no better than laches.  As the court noted in its laches order,[37] Silicon Labs obtained the documentation and test products under a non-disclosure agreement that precluded Silicon Labs from analyzing the XC5000 for any purpose other than evaluating the potential business relationship.[38]  Silicon Labs therefore could not determine whether the products infringed its patents without breaching the terms of the contract.[39]  Under these circumstances, there could be no clear duty for Silicon Labs to speak, and Silicon Labs had not acquiesced to infringement.  Furthermore, CrestaTech has not demonstrated prejudice from its purported reliance on Silicon Labs' silence.[40]

   ***Second***, both sides move for partial summary judgment on the issue of infringement.  Silicon Labs seeks a finding that CrestaTech's products infringe claim 11 of the '372 patent and of claims 1, 3, 4 and 6 of the '146 patent.  CrestaTech asks the court to hold that it does not infringe any claims of the '146, '055, '761 or '011 patents.

   CrestaTech identifies two reasons that it does not infringe the '372 patent.  First, it argues that claim 11 is indefinite, but the court already has rejected that contention.[41]  Second, it observes that the claim's preamble specifies that the claim covers "[a] wireless communication system,"[42] which the court has construed to mean "a system allowing for at least a one-way wireless communication."[43]  CrestaTech asserts—without citing any evidence in the record—that the accused products "are primarily used by consumers by plugging the devices into a cable box

---

[37] *See* Docket No. 204 at 6-7.

[38] *See* Docket No. 146-7 at §§ 1, 4, 5.

[39] *See* Docket No. 204 at 6-8.

[40] *See id.* at 8-10.

[41] *See* Docket No. 206.

[42] Docket No. 1-5 at col. 32:13.

[43] Docket No. 113 at 2.

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

system."[44]   CrestaTech therefore argues that they are not part of a wireless communication system.

Even assuming that CrestaTech is right about how customers use its products, they still infringe claim 11 of the '372 patent because the preamble to the claim does not limit its coverage. "In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim."[45]   "Conversely, a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"[46]   The preamble at issue here falls squarely into the latter category.   The claim body defines a complete invention.   The term "wireless communication system" in the preamble describes only an intended use; it has no effect on the interpretation of the claim.   There is no genuine dispute that CrestaTech infringes claim 11 of the '372 patent.

The parties' next disagreement, over certain claims of the '146 patent, essentially turns on claim construction.   The two independent claims at issue, claims 1 and 4 of the patent, each describe an apparatus that can synthesize frequencies in multiple bands.[47]   The claimed circuit includes a first and second controlled oscillator, each of which operates in a different frequency band.[48]   The output from either oscillator "may be selected to provide the output frequency for the" synthesizer as a whole.[49]   The claims describe each oscillator as "having an output frequency determined by" the combination of a discretely controllable capacitance circuit and a continuously

---

[44] Docket No. 160-3 at 4.

[45] *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)).

[46] *Id.* (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).

[47] *See* Docket No. 1-4 at col. 31:35-64, 32:6-43.

[48] *See id.* at col. 31:48-50, 32:27-30.

[49] *Id.* at col. 31:52-57, 32:31-36.

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

United States District Court
Northern District of California

United States District Court
Northern District of California

1  controllable capacitance circuit.[50]

2  CrestaTech's only non-infringement argument is that the first and second oscillators in its

3  accused products do not "generate any signals (output or otherwise) at the same time."[51]  Instead,

4  at any given time, one oscillator is operating, and the other is turned off.[52]  Therefore, CrestaTech

5  argues, both oscillators never "hav[e] an output frequency" simultaneously.[53]  But the '146

6  specification allows for this possibility; it describes a scenario where "[p]ower to the non-used

7  [oscillator] . . . may be shut down."[54]  CrestaTech correctly notes that "[t]he permissible verb

8  'may' permits a situation in which both oscillators are active,"[55] but the word "may" works both

9  ways.  In light of the specification, the word "having" in the claim does not necessarily require the

10  oscillator to actively generate a signal at all times.  And because CrestaTech has made no other

11  argument as to why its products do not practice claims 1, 3, 4 and 6 of the '146 patent,[56] the court

12  finds that it infringes those claims.[57]

13  For the remaining patents, the disputes between the parties boil down to a single quarrel

14  between the parties' experts.  Specifically, Silicon Labs' expert opines that the voltage across two

---

[50] *Id.* at col. 31:39-47, 32:16-25.

[51] Docket No. 144-5 at 26.

[52] *See id.* at 26-29.

[53] Docket No. 1-4 at col. 31:48-50, 32:27-30.

[54] *Id.* at col. 12:53-55.

[55] Docket No. 160-3 at 10.

[56] *See* Docket No. 144-5 at 26-29.

[57] CrestaTech raises a different argument for why it does not infringe claim 11 of the '146 patent. *See id.* at 30.  Silicon Labs does not move for summary judgment on this claim, and CrestaTech's motion on the claim mentions only an analog to the claim limitation discussed here.  *See* Docket No. 146-20 at 22-23.  For the reasons discussed above, the latter motion is denied as to claim 11.

8

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

input wires can constitute a single control signal.[58]  CrestaTech's expert disagrees.[59]  This is a classic "battle of the experts" on a material issue of fact.[60]  It is the jury's province to resolve such issues, not the court's.[61]

**Third**, Silicon Labs and CrestaTech move for partial summary judgment as to CrestaTech's obviousness[62] and anticipation[63] challenges to the patents in suit.[64]  Here, too, each party largely attacks the opinions of its opponent's technical expert.  Almost across the board, these expert opinions create genuine issues of material fact that the jury must resolve.

There are, however, a few exceptions.  In opposing summary judgment of validity on obviousness grounds, CrestaTech defends only some of the numerous obviousness combinations that its expert offered.[65]  At times, CrestaTech also relies on attorney argument instead of evidence in the record.[66]  More significantly, CrestaTech does not object to Silicon Labs' motion as to the

---

[58] *See* Docket No. 144-4 at ¶¶ 316, 347, 360, 400, 426.

[59] *See* Docket No. 144-5 at 32-36.

[60] *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1268-69 (Fed. Cir. 2013).

[61] *See Regents of Univ. of Cal. v. Dako N. Am., Inc.*, Case No. 05-cv-03955-MHP, 2009 WL 1083446, at *15 (N.D. Cal. Apr. 22, 2009) (explaining that a "battle of the experts" is appropriately left to the trier of fact to resolve).

[62] *See* 35 U.S.C. § 103.

[63] *See id.* § 102.

[64] As indicated above, the court already has denied CrestaTech's motion for summary judgment of invalidity for indefiniteness.  *See* Docket No. 206.  Silicon Labs also moves for summary judgment on CrestaTech's double patenting defense.  *See* Docket No. 140-3 at 9-11.  The court denied CrestaTech's motion for leave to amend its invalidity contentions to add this defense, *see* Docket No. 157, and CrestaTech has not opposed the motion with respect to double patenting. The court therefore grants summary judgment on the double patenting defense.

[65] *Compare* Docket No. 160-3 at 15-19, *with* Docket No. 144-7 at 35-40, apps. A-F.

[66] *See* Docket No. 160-3 at 16-19.

9

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

United States District Court
Northern District of California

United States District Court
Northern District of California

obviousness of the '011 and '761 patents.[67]   Silicon Labs' motion for summary judgment of non-obviousness is granted to the extent that CrestaTech did not oppose it.

The motion also is granted as to several of CrestaTech's anticipation references.  One such reference, consisting of a Ph.D. dissertation by Jan Craninckx[68] and a book disclosing the same technology by Craninckx and Michiel Steyaert,[69] teaches both discretely and continuously variable capacitance circuits, but it does not combine the two as the asserted patents require.  The Federal Circuit "has long held that '[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim.*'"[70]  The Craninckx reference does not show such an arrangement.  To the contrary, Craninckx even explains that adding "coarse tuning . . . with a [discretely variable] bank of capacitors should be seriously considered" in the future and refers to it as a "challenge[]" that "remain[s] open."[71]  CrestaTech claims that the reference "teaches detailed ways to do so,"[72] but the pages it cites contain nothing of the sort.  Craninckx does not anticipate the '011, '372 or '441 patents.[73]

The same goes for U.S. Patent No. 4,827,226, issued to Connell in May 1989, which according to CrestaTech invalidates the asserted claims of the '441 patent.[74]  CrestaTech's

---

[67] *See id.* at 12-19.

[68] *See* Docket No. 144-7 at 22-23; Docket No. 145-3.

[69] *See* Docket No. 144-7 at 23-25.

[70] *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008) (alteration in original) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)).

[71] Docket No. 145-3 at 192, 196.

[72] Docket No. 160-3 at 21.

[73] CrestaTech asserts that Craninckx also anticipates the '055 and '761 patents, *see* Docket No. 144-7 at 22-25, but Silicon Labs raises no arguments about these contentions.  *See* Docket No. 144-3 at 17-19.

[74] *See* Docket No. 144-7 at 28-29.

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

United States District Court
Northern District of California

opposition to Silicon Labs' motion relies on attorney argument[75] and differs from the opinion offered by CrestaTech's own expert.[76]  That does not suffice to defeat summary judgment.  On the remaining references, however, the parties—and their experts—must make their cases to the jury.

**Fourth**, Silicon Labs moves for summary judgment of willful infringement of claim 11 of the '372 patent and of claims 1, 3, 4 and 6 of the '146 patent.  "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[77]  "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer."[78]  "When the objective prong turns on fact questions, as related, for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury."[79]  "[T]he court should determine, 'based on the record ultimately made in the infringement proceedings,' whether a 'reasonable litigant could realistically expect' those defenses to succeed."[80]  A credible invalidity defense can defeat a claim of willful infringement.[81]

---

[75] *See* Docket No. 160-3 at 22.

[76] *See* Docket No. 144-7 at Ex. 18.

[77] *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).

[78] *Id.*

[79] *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

[80] *Id.* at 1008 (quoting *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011); *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)).

[81] *See, e.g.*, *Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1377-78 (Fed. Cir. 2012); *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319-20 (Fed. Cir. 2010); *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 579 (E.D. Tex. 2007).

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

1    Although the court already has granted summary judgment of infringement of these claims,

2    a jury still must decide whether they are valid.  The court cannot decide the objective

3    reasonableness of CrestaTech's invalidity defenses based only on the record before it now.  The

4    court therefore reserves its ruling on the objective prong of the willfulness inquiry until after trial,

5    where the jury will weigh CrestaTech's defenses and may rule on the subjective prong.[82]

6    **Fifth**, CrestaTech moves to strike an expert declaration that Silicon Labs submitted with

7    its opposition to CrestaTech's motion for summary judgment.[83]  Civ. L.R. 7-3(a) provides that

8    "[a]ny evidentiary or procedural objections to [a] motion must be contained within the brief or

9    memorandum" opposing the motion.  CrestaTech's separately filed motion does not comply with

10   this requirement and is denied for that reason.[84]  Whether the expert testimony in the declaration is

11   admissible at trial is a separate issue that CrestaTech may raise in a motion in limine.

12                                   **IV.**

13   Silicon Labs' motions for summary judgment are GRANTED-IN-PART, only as to the

14   following issues:  (1) CrestaTech's affirmative defenses of waiver, estoppel and unclean hands; (2)

15   CrestaTech's double patenting defense; (3) infringement of claim 11 of the '372 patent and of

16   claims 1, 3, 4 and 6 of the '146 patent; (4) CrestaTech's obviousness defenses with respect to the

---

[82] *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1237 n.2 (Fed. Cir. 2011) (recognizing that "district courts have broad discretion to set the order of trial" and allowing district courts to try "certain issues that affect resolution of the objective prong inquiry . . . after the jury has considered the subjective prong in the infringement proceeding"); *Fujifilm Corp. v. Motorola Mobility LLC*, Case No. 12-cv-03587-WHO, 2015 WL 757575, at *26 (N.D. Cal. Feb. 20, 2015) (reserving ruling on the objective prong of the willfulness inquiry until after trial); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, Case No. 10-cv-03972-LHK, 2012 WL 4497966, at *39 (N.D. Cal. Sept. 28, 2012) (same).

[83] *See* Docket No. 162-10; Docket No. 168.

[84] *See Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, Case No. 15-cv-03839-HSG, 2015 WL 7753267, at *6 n.3 (N.D. Cal. Dec. 2, 2015); *Seifi v. Mercedes-Benz U.S.A., LLC*, Case No. 12-cv-05493-THE, 2014 WL 8370026, at *1 (N.D. Cal. Dec. 17, 2014); *Oak Point Partners, Inc. v. Lessig*, Case No. 11-cv-03328-LHK, 2012 WL 4121109, at *1 n.2 (N.D. Cal. Sept. 18, 2012).

Case No. 14-cv-03227-PSG
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

United States District Court
Northern District of California

1  |  '011 and '761 patents and any combinations for which it did not oppose summary judgment and

2  |  (5) CrestaTech's anticipation defenses based on the Craninckx and Connell references.

3  |  CrestaTech's motion for summary judgment and motion to strike are DENIED in their entirety.

4  |  **SO ORDERED.**

5  |  Dated: March 3, 2016

6  |  _____
7  |  PAUL S. GREWAL
   |  United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

13

28

United States District Court
Northern District of California